IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA BRAVO,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No.  2:22-CV-1782-DMC<br><br>MEMORANDUM OPINION AND ORDER |

       Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 6 and 8, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c); see also ECF No. 9 (minute order reassigning case to Magistrate Judge). Pending before the Court are the parties' briefs on the merits, ECF Nos. 14 and 17.

       The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

| | | |
|---|---|---|
| Step 1 | | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

///

| | | |
|---|---|---|
| | Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| | Step 5 | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///
///
///
///

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on October 10, 2020. See CAR 17.[1] In the application, Plaintiff claims disability began on September 1, 2020. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on September 20, 2021, before Administrative Law Judge (ALJ) Trevor Skarda. In a November 24, 2021, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): major depressive disorder; bipolar disorder; and post-traumatic stress disorder (PTSD);

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform a full range of work at all exertional levels; the claimant is limited to simple, routine, and repetitive tasks in a low-stress work environment, with "low stress" defined as requiring occasional work setting [changes] and occasional decision-making; the claimant is capable of occasional face-to-face interaction and can be around coworkers throughout the workday, but cannot perform tandem, joint, or shared tasks;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 17-30.

After the Appeals Council declined review on August 3, 2022, this appeal followed.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[1] Citations are to the Certified Administrative Record (CAR) lodged on February 7, 2023, ECF No. 10.

## III.  DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ erred by failing to identify and reconcile an apparent conflict between the vocational expert's testimony and definitions contained within the Dictionary of Occupational Titles (DOT); and (2) the ALJ erred by failing to adopt or explain rejection of Dr. Spivey's opinions.

### A.   **Evaluation of Dr. Spivey's Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

///

1         The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c. These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source. See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]"). Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources. See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

         Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness." See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other factors." See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)). Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

         Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors." See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)). For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be." See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)). "For consistency, the regulations state: '[t]he more consistent a

medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)). "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

At Step 4, the ALJ considered opinion evidence offered by a number of sources, including Dr. Spivey. See CAR26-28. As to Dr. Spivey, the ALJ stated as follows:

> The opinions of psychological consultative examiner Patricia Spivey, Psy.D. are more persuasive. Dr. Spivey conducted her psychological consultative examination on April 1, 2015. At this exam, the claimant admitted noncompliance with her previously prescribed psychotropic medications "because she ran out and she did not have a way to get to the pharmacy". She also reported "that she was offered therapy, but she was telling them that she felt better because she did not feel like going". Dr. Spivey's mental status exam revealed forthcoming and cooperative behavior, normal speech, full orientation, self-deprecating thought content, linear and goal-directed thought processes, normal abstraction, and normal general fund of knowledge. On memory testing, the claimant recalled two of three presented objects and she spelled "world" backwards correctly. Her insight and judgment were fair. Based on these results, Dr. Spivey diagnosed the claimant with a dysthymic disorder and dependent traits (Ex. B7F, pp. 3-4). Dr. Spivey opined that the claimant had moderate limitations in her ability to maintain emotional stability/predictability, and mild limitations in her ability to withstand the stress of a routine workday and her ability to interact appropriately with coworkers, supervisors, and the public on a daily basis (Ex. B7F, p. 5). This opinion is well supported by the results of Dr. Spivey's mental status exam, particularly her self-deprecating thought content (Ex. B7F p. 4) and her opinions are ultimately consistent with the claimant's most recent mental status exams after resuming her psychiatric medication after in her inpatient hospitalization (Ex. B11F, p. 88; B10F, pp. 18-21; B15F, pp. 2-4; B18F, pp. 1-3).

CAR 27-28.

/ / /

/ / /

/ / /

/ / /

/ / /

Plaintiff argues that, though the ALJ purported to accept Dr. Spivey's opinions, the ALJ failed to address Dr. Spivey's opinion that Plaintiff is moderately limited in her ability to maintain emotional stability and predictability.  See ECF No. 14, pgs. 10-11.  According to Plaintiff:

> . . . [T]he ALJ failed to explain why he did not include Dr. Spivey's opined limitations in the RFC despite finding the opinion persuasive. Specifically, the ALJ failed to include Dr. Spivey's opinion that Plaintiff has moderate limitations in her ability to maintain emotional stability/predictability. Ar. 22, 442. The ALJ found this opinion persuasive but failed to incorporate this moderate limitation in the RFC. Ar. 22.
>
> The Ninth Circuit has concluded that "where the ALJ accepts the medical assessment of moderate limitations, those limitations must be accounted for in the RFC." *Wascovich v. Saul*, 2:18-CV-659-EFB, 2019 WL 4572084, at *4 (E.D. Cal. Sept. 20, 2019) (*citing Betts v. Colvin*, 531 F. App'x 799, 800 (9th Cir. 2013). . . .
>
> The mental portion of the RFC limits Plaintiff to simple, routine, and repetitive tasks; occasional changes in the work setting; occasional decision-making; occasional face-to-face public interaction; and work that does not require tandem, joint, or shared tasks. Ar. 22. However, these limitations fail to address the moderate limitation in maintaining emotional stability/predictability opined by Dr. Spivey. *See Sahyoun v. Saul*, No. 2:18-CV-576-EFB, 2020 WL 1492661, at *4 (E.D. Cal. Mar. 27, 2020) (rejecting argument that RFC determination that plaintiff could sustain work involving simple, repetitive tasks adequately captured moderate limitations in maintaining regular attendance, completing a normal workday or work week without interruption from a psychiatric condition, and handling normal work-related stress).

ECF No. 14, pgs. 10-11.

Plaintiff's argument is unpersuasive.  Specifically, the Court finds that the ALJ in fact accepted Dr. Spivey's opinion that Plaintiff is moderately limited in her ability to maintain emotional stability by incorporating into the residual functional capacity assessment a limitation to a low-stress work environment involving only occasional work changes or interactions.  These limitations specifically accommodate Plaintiff's limitations with respect to emotional stability be minimizing work situations which would create emotional instability, such as frequent changes to routines or continuous interactions.

This case is distinguishable from Sahyoun v. Saul, cited by Plaintiff. In Sahyoun, the court concluded that the ALJ's limitation to simple, repetitive work did not adequately capture a credited doctor's opinion that the claimant was moderately limited in maintaining regular attendance, completing a workday without interruption from a psychiatric condition, and handling

8

normal work-related stress.  See ECF No. 26 in case no. 2:18-cv-0576-EFB.  Here, the ALJ went further than the ALJ in Sahyoun by specifically limiting Plaintiff to a low-stress work setting.  The Court finds that this specific limitation adequately accounts for the moderate limitations identified by Dr. Spivey.

### B. Vocational Findings

The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity.  The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[2]  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).  "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered

---

[2]    Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20 C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§ 404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§ 404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20 C.F.R. §§ 404.1567(e) and 416.967(e).  Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

by the Grids." Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

For Social Security benefits hearings, the DOT is the default presumption for disability classifications. Massachi v. Astrue (9th Cir. 2007) 486 F.3d 1149, 1150.  Moreover, the ALJ has an affirmative responsibility to ask about any possible conflict between vocational expert evidence and information provided in the DOT.  Id.  The ALJ may, however, rebut the presumption of applicability of the DOT when expert testimony exists that is supported by persuasive evidence contradicting the DOT. See Murry v. Apfel, 1999 U.S. App. LEXIS 28911, 1, 9 (9th Cir. 1999) (holding that the Administrative Law Judge is not bound by the DOT

descriptions but can instead rely on the testimony of the vocational expert and own findings specific to the individual plaintiff before the Administrative Law Judge); see also Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999) (holding that the ALJ can rely on vocational expert's testimony as to (1) the jobs a claimant can work in given the limitations and residual functional capacity and (2) the availability of these jobs on a national scale); see also Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (concluding that vocational experts have the authority to testify whether a particular plaintiff would be able to perform specific jobs within DOT subcategories); Distasio v. Shalala, 47 F.3d 348, 350 (9th Cir. 1995); see also Barker v. Secretary of Health and Human Svcs., 882 F.2d 1474, 1478 n.1 (9th Cir. 1989) (holding that a plaintiff restricted to sedentary work is not automatically barred from performing all "light" jobs when plaintiff was still capable of performing a subcategory of "light" jobs); see also Terry v. Sullivan, 903 F.2d 1273, 1277 (9th Cir. 1990).

At Step 5, the ALJ received testimony from a vocational expert and concluded that Plaintiff can perform other jobs. See CAR 29. The ALJ stated:

> The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of the following representative occupations identified by *Dictionary of Occupational Titles* (DOT) job title and number, physical exertion requirement, specific vocational preparation (SVP) score, and incidences of jobs in the national economy:
>
> - Cleaner II, DOT #: 919.687-014, SVP 1, medium, 56,000 jobs nationally;
> - Hand Packager, DOT #: 920.587-018, SVP 2, medium, 77,900 jobs nationally;
> - Linen Room Attendant, DOT #: 222.387-030, SVP 2, medium, 23,200 jobs nationally.
>
> At the hearing, the vocational expert testified that any of her statements that were not addressed by the DOT, were based on her own experience, knowledge, and training in the field of vocational rehabilitation. The undersigned finds that the vocational expert's experience and education are acceptable bases for these discrepancies. Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is

11

>   consistent with the information contained in the Dictionary of Occupational Titles.

CAR 29.

According to Plaintiff, there is a discrepancy between the jobs identified by the vocational expert and the DOT's definitions of these jobs. See ECF No. 14, pgs. 7-9. Plaintiff states that, according to the DOT, ". . .these jobs require a Reasoning Level of 2 (cleaner and hand packager) or 3 (linen room attendant)," but "the ALJ's RFC is best understood as limiting Plaintiff to a General Educational Development ('GED') Reasoning Level of 1." Id. at 8. Plaintiff argues:

>   The Ninth Circuit has held that an RFC limited to simple, routine tasks, and further limited to no more than occasional changes and occasional decision making in the work setting "is very closely aligned with Level 1 reasoning, which is defined to include 'simple' instructions and 'standardized situations with occasional or no variables,' i.e., routine tasks." Steven Rodney C. v. Comm'r, SSA, No. 2:20-CV-01753-YY, 2022 U.S. Dist. LEXIS 84074, at *6 (D. Or. May 10, 2022) (remanded due to conflict between simple, routine tasks, limitation to occasional work changes and occasional decision-making, and the DOT's indication that the identified jobs had a reasoning level of 2.) Further, an "ALJ's failure to reconcile this apparent conflict is not harmless." Steven Rodney C., 2022 U.S. Dist. LEXIS 84074, at *7 (quoting Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1004 (9th Cir. 2015) (holding that apparent conflict between the RFC and the demands of Level Two reasoning was not harmless.))

ECF No. 14, pg. 9.

The Court agrees with Plaintiff's assessment that there is, in fact, a conflict between the DOT and the vocational expert's testimony with respect to the reasoning level required for the identified jobs and Plaintiff's actual reasoning ability. The Court does not, however, find error in the ALJ's analysis at Step 5. As explained above and noted by Defendant, the ALJ may rebut the presumptive applicability of the DOT when vocational expert testimony is obtained and where the ALJ relies on the vocational expert's professional experience. This is precisely what the ALJ did in this case. In particular, the ALJ noted that the vocational expert testified that any inconsistencies between her testimony and the DOT were based on her own personal knowledge, experience, and training. See CAR 29; see also CAR 48-50 (transcript of vocational expert testimony).

# IV.  CONCLUSION

Based on the foregoing, the Court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion for summary judgment, ECF No. 14, is DENIED.
2. Defendant's motion for summary judgment, ECF No. 17, is GRANTED.
3. The Commissioner's final decision is AFFIRMED.
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  February 26, 2024

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE